UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE MOTION FOR ORDER REMANDING ACTION TO STATE COURT (DKT. 15)

**I.   Introduction**

On April 17, 2024, Iris Ortiz ("Plaintiff") brought this putative class action on behalf of herself and all others similarly situated, against Defendants Sheraton Operating LLC ("Defendant Sheraton"), Maribel Sandoval ("Defendant Sandoval") and Does 1–100 (collectively "Defendants") in the Los Angeles Superior Court. Dkt. 1-2. The Complaint advances ten causes of action: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting times penalties; (6) wage statement violations; (7) failure to pay timely wages; (8) failure to indemnify; (9) violation of labor code § 227.3; (10) unfair competition. *Id.* On June 11, 2024, Defendant Sheraton filed an answer to the Complaint. Dkt. 1-15.

On June 17, 2024, Defendant Sheraton removed this action pursuant to 28 U.S.C. §§ 1332(d), 1441 and 1446 (the Class Action Fairness Act or "CAFA"). Dkt. 1. In support of the basis for removal, Defendant Sheraton filed a Declaration of Andrew Wright ("Wright Declaration" (Dkt. 2)), and a Declaration of Kristen Palagano ("First Palagano Declaration" (Dkt. 3)). On July 18, 2024, Plaintiff filed a Motion to Remand (Dkt. 15 ("Motion")), with accompanying Evidentiary Objections to the First Palagano Declaration (Dkt. 16). On August 26, 2024, Defendant Sheraton filed an opposition to the Motion ("Opposition" (Dkt. 18)) with accompanying declarations from Kristen Palagano ("Second Palagano Declaration" (Dkt. 18-1)) and Chester Hanvey ("Hanvey Declaration" (Dkt. 18-2)). On August 30, 2024, Plaintiff filed a reply to the Opposition ("Reply" (Dkt. 19)).

A hearing on the Motion was held on September 16, 2024, and the matter was taken under submission. For the reasons stated in this Order, the Motion is **DENIED**.

**II.   Background**

   A.   Parties

It is alleged that Plaintiff is a resident of the State of California. Dkt. 1-2 ¶ 2. It is alleged that between June 2022 and December 2023, Defendants employed Plaintiff as a non-exempt hourly employee, whose duties included checking rooms, assigning room to room attendants and ensuring that room

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

attendants had proper equipment. *Id.* Plaintiff has brought this putative class action on behalf of herself and all other current and former non-exempt California employees of Defendants. *Id.* ¶ 1.

The proposed class is defined as "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class." *Id.* ¶ 25.

It is alleged that Defendant Sheraton is a limited liability company organized in Delaware and doing business in Los Angeles County. *Id.* ¶ 3. It is alleged that Defendant Sheraton employed Plaintiff and similarly situated employees within California. *Id.*

It is alleged that Defendant Sandoval was residing in California during the time period relevant to the action. *Id.* ¶ 4. It is alleged that Defendant Sandoval was Plaintiff's manager during the relevant time period. *Id.*

      B.      Allegations in the Complaint

It is alleged that, during the relevant time period, Plaintiff and members of the putative class ("Class Members") were subject to Labor Code §§ 510, 1194 and 1199. Dkt. 1-2 ¶ 36. It is alleged that for four years prior to April 17, 2024, through the present, Plaintiff and Class Members have at times worked for Defendants during shifts that consist of more than eight hours in a workday, and/or 40 hours in a workweek, and/or seven consecutive days in a workweek, without being paid overtime wages for all hours worked. *Id.* ¶ 39. It is alleged that this improper payment was partially due to Defendants' failure accurately to track and/or pay for all hours actually worked. *Id.*

It is alleged that during relevant the time period, Plaintiff and Class Members were also subject to Labor Code § 1197 *Id.* ¶ 43. It is alleged that for four years prior to April 17, 2024, through the present, Defendants have at times failed accurately to track and/or pay for all hours actually worked at rate above the minimum wage. *Id.* ¶ 45.

It is alleged that, during relevant the relevant time period, Plaintiff and Class Members were also subject to Labor Code § 512. *Id.* ¶ 49. It is alleged that for four years prior to April 17, 2024, through the present, Plaintiff and Class Members have at times not been provided with a complete, timely, duty-free and uninterrupted 30-minute meal period every five hours of work without waiving the right to take them. *Id.* ¶ 52. It is also alleged that at times Defendants have failed to provide one additional hour of pay at each Class Member's regular rate of compensation on the occasions that each Class Member was not provided compliant meal periods. *Id.*

It is alleged that during relevant the relevant time Plaintiff and Class Members were covered by applicable Wage Orders. *Id.* ¶ 57. It is alleged that for four years prior to April 17, 2024, through the present, Plaintiff and Class Members have not always been authorized to take complete, timely, duty-free and uninterrupted 10-minute rest periods every four hours of work or major fraction thereof. *Id.* ¶ 60. It is alleged that Defendants have at times failed to provide one additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not authorized or permitted to take compliant rest periods. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
|---|---|---|---|
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

It is alleged that, during relevant the relevant period, Plaintiff and Class Members were subject to Labor Code §§ 201, 202 and 203. *Id.* ¶ 65. It is alleged that for three years prior to April 17, 2024, through the present, at times Defendants have failed to provide overtime wages and to pay all wages to Class Members earned prior to resignation or termination. *Id.* ¶ 67.

It is alleged that, during the relevant period, Plaintiff and Class Members were subject to Labor Code § 226. *Id.* ¶ 73. It is alleged that for one year prior to April 17, 2024, through the present, Defendants have at times failed to provide Plaintiff and Class Members with accurate wage statements. *Id.* ¶¶ 75–76.

It is alleged that during relevant the relevant time Plaintiff and Class Members were subject to Labor Code § 204. *Id.* ¶ 81. It is alleged that for one year prior to April 17, 2024, through the present, Defendants have at times employed policies and practices that resulted in not paying Plaintiff and Class Members as required by Labor Code § 204. *Id.* ¶ 84.

It is alleged that, during the relevant period, Plaintiff and Class Members were subject to Labor Code § 2802. *Id.* ¶ 88. It is alleged that for three years prior to April 17, 2024, through the present, Defendants at times have required Plaintiff and Class Members to incur necessary expenditures or losses in direct consequence of their work duties, including mileage and/or gas costs incurred in driving personal vehicles for work-related purposes and using cellular phones for work-related purposes. *Id.* ¶ 90. It is alleged that Defendants have at times failed and refused to reimburse Plaintiff and Class Members for these losses and/or expenditures. *Id.* ¶ 91.

It is alleged that Defendants promulgated and maintained a uniform policy providing for paid vacations, and that Plaintiff's employment contract with Defendants included paid vacations. *Id.* ¶ 96. It is alleged that, for at least four years prior to April 17, 2024, through the present, Defendants have had a consistent policy of failing to provide Plaintiff and similarly situated employees or former employees within the State of California with compensation at their final rate of pay for unused vested paid vacation days pursuant to Labor Code § 227.3. *Id.* ¶ 97.

It is alleged that for at least four years prior to April 17, 2024, through the present, Defendants have had a consistent policy of failing to provide Plaintiff and similarly situated employers or former employees in California with the rights provided to them under Labor Code § 245, *et seq. Id.* ¶ 101. It is alleged that this unlawful business practice, along with the aforementioned conduct, has provided to Defendants a competitive advantage over other comparable companies doing business in California. *Id.*

### III.     Plaintiff's Evidentiary Objections

Plaintiff has made boilerplate objections to four statements in the First Palagano Declaration: (1) the estimates about the number of non-exempt employees that Defendant Sheraton employed; (2) the amount of payments that employees received; (3) the number of non-employees separated from their employment; and (4) the amount in potential waiting time penalties owed. *See, generally*, Dkt. 16. Because Plaintiff did not explain the basis for these objections, "we are largely reduced to guessing at the arguments underlying them." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

The objections to statements 1, 3, and 4 are **MOOT** because the calculations relied upon by Defendant Sheraton to meet the amount in controversy requirement are based on the Hanvey Declaration, to which Plaintiff has not objected.

The objections to the second at-issue statement: "At all times since April 2021, all Proposed Class Members have been paid at least fourteen dollars ($14.00) per hour on a straight-time basis. Most of these individuals earn at least several dollars more per hour, and none have been paid below the operative California minimum wage during this time period" (Dkt. 3 ¶ 5) are **OVERRULED** for the reasons stated below.

    1.    <u>Lacks Foundation (FRCP 56(c)(4), L.R. 7-7)</u>

The at-issue statement does not lack foundation. Palagano states that she is the "Vice President of Human Resources for Marriott International Administrative Services, Inc." and has "access to records of employes of Sheraton Operating LLC . . . includ[ing] information relating to the identities of Sheraton's non-exempt employees, their positions, their time and pay data, and their hire and termination dates." Dkt. 3 ¶ 1. That is enough to establish foundation. *See Torrez v. Freedom Mortg., Corp.*, No. EDCV 17-867 JGB (KKx), 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017) (declaration provided an adequate foundation because the declarant specified his position in the company and stated that he has access to certain employee-related information, which he accesses through his regular course of business activities). Moreover, a defendant is permitted to rely on a declaration from an individual who has reviewed relevant employee payroll and wage data to support its amount in controversy allegations. *Enomoto v. Siemens Indus., Inc.*, No. 22-56062, 2023 WL 8908799, at *2 (9th Cir. Dec. 27, 2023).

    2.    <u>Improper Factual Conclusion</u>

Overruled for the reasons stated as to the first objection.

    3.    <u>Improper Lay Person Opinion;</u>

Overruled for the reasons stated as to the first objection.

    4.    <u>Fed. R. Evid. 602: Assumes Facts/Lacks Foundation/Speculative/Unsupported Legal Conclusion</u>

Overruled for the reasons stated as to the first objection.

    5.    <u>Best Evidence (FRE 1002)</u>

Payroll contents may be established without producing written receipts or books of account. *See Thompson v. La Petite Acad., Inc.*, No. 2:22-CV-04348-AB (JPRx), 2022 WL 5241838, at *2 (C.D. Cal. Oct. 6, 2022) (overruling best evidence rule objection because payroll contents may be proven without producing written receipts or books of account); *Jones v. Tween Brands, Inc.*, No. 2:14-cv-1631-ODW (PLAx), 2014 WL 1607636, at *2 (C.D. Cal. Apr. 22, 2014) (finding that defendant was not required to provide the payroll data upon which its declarant relied upon). Accordingly, this objection is overruled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
|---|---|---|---|
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

   6. <u>Fed. R. Evid. 701: Assumes Facts/Lacks Foundation/Lacks Personal Knowledge/Speculative</u>

Overruled for the reasons stated as to the first objection.

   7. <u>Fed. R. Evid. 702: Improper Expert Opinion/Report Not Based On Sufficient Facts Or Data</u>

Palagano's testimony does not qualify as expert testimony. Palagano's statements are based on personal knowledge; they are not the product of "scientific, technical, or other specialized knowledge . . . ." Fed. R. Evid. 702(a). That she knows the information as a result of her work for Marriott does not convert factual observations into expert testimony. Courts routinely permit witnesses to offer lay opinion testimony concerning matters they learn or experience as a result of their employment. *See Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 946–47 (C.D. Cal. 2014) (collecting cases). Accordingly, this objection is overruled.

**IV.** <u>Analysis</u>

  A. Legal Standards

A motion to remand is the vehicle used to challenge the removal of an action. *See* 28 U.S.C. § 1447(c). In general, a state civil action may be removed only if, at the time of removal, a federal court would have jurisdiction over the action. *See* 28 U.S.C. § 1441. "CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). "Through CAFA, Congress broadened federal diversity jurisdiction over class actions by, among other things, replacing the typical requirement of complete diversity with one of only minimal diversity." *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013).

In seeking "to pursue a federal forum under CAFA," the removing defendant bears the burden "to put forward evidence . . . satisfy[ing] [the] requirements of CAFA." *Ibarra*, 775 F.3d at 1197. The notice of removal must only include "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), and the allegations of minimal diversity may be based on "information and belief." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019). "The pleading 'need not contain evidentiary submissions.' " *Id.* (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014)). As a general rule of interpretation in connection with evaluating the propriety of a removal under CAFA, "Congress and the Supreme Court have instructed us to interpret CAFA's provisions under section 1332 broadly in favor of removal." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015). "Congress intended CAFA to be interpreted expansively." *Ibarra*, 775 F.3d at 1197.

Like other challenges to jurisdictional allegations, a motion to remand following removal under CAFA may be "facial" or "factual." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020). "A 'facial' attack accepts the truth of the [removing party's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.' " *Id.* (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
|---|---|---|---|
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

2014)). "A factual attack contests the truth of the allegations themselves." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (cleaned up). Although a plaintiff may introduce evidence in support of a factual attack, the plaintiff "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700; *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."). Where a plaintiff presents a factual challenge to the removing defendant's jurisdictional allegations, the burden is on the defendant to provide "competent proof" that the jurisdictional requirements are satisfied by a preponderance of the evidence. *Harris*, F.3d at 701.

    B.    Application

        1.    <u>Minimal Diversity</u>

            a)    Legal standard

As the party alleging minimal diversity, the removing defendant "should be able to allege affirmatively the actual citizenship of the relevant parties," *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001), and show by a preponderance of the evidence that minimal diversity is satisfied, *see Harris*, 980 F.3d at 701.

There is minimal diversity under CAFA where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). For the purposes of determining diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The citizenship of a natural person is "determined by her state of domicile, not her state of residence." *Kanter*, 265 F.3d at 857. "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id.* However, a person's residence can be prima facie evidence of domicile. *Kaldis v. Wells Fargo Bank, N.A.*, No. 2:16-cv-06407-ODW-GJS, 2016 WL 6407377, at *3 (C.D. Cal. Oct. 28, 2016) (citing *State Farm Mut. Auto. Ins. Co v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)).

            b)    Application

In the Notice of Removal, Defendant Sheraton contends that the minimal diversity of citizenship requirement is met. Dkt. 1 ¶¶ 15–21. Defendant Sheraton alleges that Plaintiff is a citizen of California for diversity purposes because Plaintiff is domiciled, works, and lives in California. *Id.* ¶ 18 (citing Dkt. 1-2 ¶¶ 2, 25). It alleges that Defendant is a citizen of Delaware, where it is organized as a limited liability company, and Maryland, where it has its principal place of business. *Id.* ¶¶ 19–20.

Plaintiff argues that Defendant Sheraton has not met its burden because it failed to provide competent evidence of Plaintiff's citizenship in the United States, length of residence in California, employment, location of assets, voting registration on, driver's license address, payment of state taxes, receipt of mail, representation in public documents, location of family, and connections to the community. Dkt. 15 at 18–19 (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
|---|---|---|---|
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

Defendant Sheraton replies that it has met its burden in alleging that Plaintiff is domiciled in California. Dkt. 18 at 22–23. It cites the Complaint where Plaintiff alleges that she is a resident of California (Dkt. 18 at 23 (citing Dkt. 1-2 ¶ 2)) and her resume that shows every place she has worked since 2014 has been in California (Dkt. 18 at 25 (citing Dkt. 18-1, Ex. A)). Plaintiff does not expressly dispute that she is a citizen of California; she merely disputes the sufficiency of Defendant Sheraton's evidence.

Defendant has met its burden to establish Plaintiff is a citizen of California. It is uncontested that Plaintiff resided in California at the time of filing the Complaint, and during the four years she worked for Defendant Sheraton. Moreover, Plaintiff does not dispute the authenticity of her resume proffered by Defendant Sheraton that shows that she graduated from a California high school, received a medical assistant diploma from a California college, and worked for four California-based employers, not including Defendant Sheraton, beginning in 2014. Dkt. 18-1, Ex. A at 4–5. In one portion of the Motion to Remand, Plaintiff appears to concede that she is a citizen of California. *See* Dkt. 15 at 18 ("Plaintiff merely states in the complaint that she is a citizen of California, and nothing more.).

Collectively, this evidence is sufficient for Defendant Sheraton to meet its burden as to Plaintiff's citizenship. *See Huitron v. U.S. Foods, Inc.*, No. CV 14-05482 MMM (PLAx), 2014 WL 4215656, at *2 (C.D. Cal. Aug. 25, 2014) (defendant had met its burden by showing that the plaintiff lived in California at all times relevant to this action, was born in California, graduated from a California high school, attended college in California and worked for three California employers–including defendant–from 2005 to 2013); *Kaldis*, 2016 WL 6407377, at *3 (defendant "cited multiple facts" to establish the plaintiff's California citizenship through the complaint's allegations that the plaintiff resided in California at the time the complaint was filed and throughout her multi-year period of employment).

    2.    <u>Amount in Controversy</u>

        a)    Legal Standards

The "amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). "Importantly, that '[a]mount at stake' does not mean likely or probable liability; rather, it refers to possible liability." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (quoting *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020)).

Where the plaintiff fails to specify the amount of the claimed damages of the members of the putative class, a removing defendant need only allege in its notice of removal that the amount in controversy requirement is met. *Harris*, 980 F.3d at 699 (citing *Dart Cherokee*, 574 U.S. at 88–89). As *Harris* explained:

> A defendant may rely on reasonable assumptions to prove that it has met the statutory threshold. *See Ibarra*, 775 F.3d at 1197; *see also Arias*, 936 F.3d at 922. A defendant need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty. *See Dart*, 574 U.S. at 88–89, 135 S.Ct. 547; *see also Arias*, 936 F.3d at 925. Nonetheless, the burden of demonstrating the reasonableness of the assumptions on which the calculation of the amount in controversy was based remained at all times with [the defendant].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
|---|---|---|---|
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

> The preponderance standard does not require a district court to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden. Rather, "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. The district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own. After considering any evidence put forth by the parties, and assessing the reasonableness of the defendant's assumptions, "the court then decides where the preponderance lies." *Id.* (citation omitted).

*Harris*, 980 F.3d at 701.

The "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.' " *Arias*, 936 F.3d at 927 (quoting *Ibarra*, 775 F.3d at 1199). Whether the alleged violations occur at times, as a matter of pattern and practice, or uniformly, as alleged in the complaint, has a significant impact on the amount in controversy calculation. *Cocroft v. EquipmentShare.com Inc.*, No. 24-cv-00645-BAS-AHG, 2024 WL 3877274, at *7 (S.D. Cal. Aug. 19, 2024) (citing *Arias*, 936 F.3d at 925–26). This "informs the court's adoption of a violation rate expressed as a percentage when calculating the amount in controversy." *Id.*

        b)      Application

The Complaint does not state an alleged amount of the damages to the members of the putative class. The parties do not dispute that Plaintiff has made a factual challenge as to the amount in controversy issue. Thus, she challenges the truth of Defendant Sheraton's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence. *See Harris*, 980 F.3d at 700; *Salter*, 974 F.3d at 964; *Ibarra*, 775 F.3d at 1199. Accordingly, Defendant Sheraton must show, by a preponderance of the evidence, that the amount in controversy meets the minimum $5 million threshold of CAFA.

        (1)      <u>Claim for Waiting Time Penalties (5th Cause of Action)</u>

California Labor Code § 203 states:

> "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202 . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

Plaintiff seeks to recover waiting time penalties pursuant to Cal. Lab. Code §§ 203, 218.6, Cal. Code Civ. Proc. §§ 1021.5, 1032, and Cal. Civ. Code § 3287. Dkt. 1-2 ¶¶ 48–63.

Defendant Sheraton calculates the alleged waiting time penalties as $6,828,267.60. Dkt. 18 at 20. Relying on the Hanvey Declaration, Defendant Sheraton contends that there are at least 2079 Class Members whose employment with it ended from April 17, 2021, through June 11, 2024. Dkt. 18 at 20

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
|---|---|---|---|
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

(citing Dkt. 18-2 ¶ 5). It contends that those Class Members worked an average of 7.82 hours per day. *Id.* (citing Dkt. 18-2 ¶ 5). It contends that "it is reasonable to construe Plaintiff's complaint as alleging that every discharged or quitting employee had at least some alleged unpaid wages and therefore would be entitled to waiting time penalties, if Plaintiff prevails." Dkt. 18 at 19. It contends that the 30-day maximum is reasonable because it denies that it owes any wages, therefore it could not have already paid "any such alleged unpaid wages" within 30 days of employment separation Dkt. 18 at 19–20. Therefore, using the lowest minimum wage of $14.00, and assuming the 30-day penalty maximum applies to all 2079 Class Members who were discharged or resigned, Defendant Sheraton contends the amount in controversy for waiting time penalties damages without interest is approximately $6,828,267.60. *Id.* at 20.

Plaintiff contends that it is unreasonable to assume that all 2079 Class Members would be entitled to the 30-day multiplier because those 2079 might include employees terminated fewer than 30 days before the Complaint was filed. Dkt. 19 at 13. Plaintiff states that the only reasonable rate to assume is that a 10% violation rate applies to 10% of the 2079 employees. Dkt. 19 at 13–14.

It is unnecessary to resolve the dispute as to whether it was reasonable for Defendant Sheraton to have included all 2079 separated employees in its waiting time penalties calculation. Thus, the $5 Million amount in controversy requirement is met even assuming a far lower rate. The Complaint alleges that labor violations occurred "at times" to "some of [the class members]." Dkt. 1-2 ¶¶ 14–21. However, the Complaint also alleges that Defendants "intentionally adopted *policies or practices*" that resulted in the failure to pay all wages earned prior to termination or resignation. Dkt. 1-2 ¶ 68 (emphasis added). "Critically, the recovery of waiting time penalties does not hinge on the number of violations committed." *Demaria v. Big Lots Stores - PNS, LLC*, No. 2:23-cv-00296-DJC-CKD, 2023 WL 6390151, at *7 (E.D. Cal. Sept. 29, 2023). A single labor violation triggers the waiting time penalties under § 203. *See Thompson v. La Petite Acad., Inc.*, No. 2:22-CV-04348-AB (JPRx), 2022 WL 5241838, at *3 (C.D. Cal. Oct. 6, 2022) ("[T]here need only be one violation that results in the failure to pay an employee upon termination or resignation in order to incur the waiting time penalties."). It is reasonable to assume that of the 2079 separated employees, at least half experienced at least one alleged labor violation over the course of their employment, thereby triggering waiting time penalties.

Moreover, using an amount less than the 30-day penalty maximum is unreasonable. The Complaint itself seeks penalties "up to a maximum of thirty (30) days." Dkt. 1-2 ¶ 69. Further, as conceded by Plaintiff's counsel at the hearing, the Class Period is still running, which shows that more than 30 days have passed since all 2079 employees were separated.

For these reasons, and using the data provided in the Hanvey Declaration, the amount in waiting time penalties for 50% of separated employees who receive a 30-day penalty would be $3,412,491.60.[1]

        (2)    <u>Meal and Rest Period Violations (3rd and 4th Causes of Action)</u>

California law requires a meal break for employees who work a period of five hours or more, and a rest period for every four hours of work. *Brinker Rest. Corp. v. Superior Ct.,* 53 Cal. 4th 1004, 1041, 1028–

---

[1] Using the data referenced in the Hanvey Declaration, Dkt. 18-2 ¶ 5, (1039 former employees) x (7.82 hour, average shift length x $14.00 minimum wage) x (30 days) = $3,412,491.60.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

29 (2012). Plaintiff seeks to recover for missed meal and rest periods pursuant to Cal. Lab. Code §§ 226, 226.7, Cal. Code Civ. Proc. §§ 1021.5, 1032, and Cal. Civ. Code § 3287. Dkt. 1-2 ¶¶ 48–63.

The parties disagree as to whether an assumed violation rate of 100% or even 20% as to meal and rest periods is reasonable. At the hearing, Plaintiff's counsel did not dispute a 2% assumed rate for meal and rest period violations. Indeed, to do so would "strain[] credulity" that Plaintiff would file a class action on such a conservative estimate. *Murillo v. Target Corp.*, No. LACV 23-03033JGB (MRW), 2023 WL 4553597, at *8 (C.D. Cal. July 14, 2023). A 2% violation rate for meal periods would amount to $348,033.92,[2] and $358,842.38 for rest periods.[3] This amount, when combined with attorneys' fees and waiting time penalties, shows an amount in controversy greater than $5 million. Accordingly, it is unnecessary to determine the reasonableness of a 20% or 100% assumed violation rate. This is also consistent with Ninth Circuit precedent:

> Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden. But often, as illustrated here, the reason a defendant's assumption is rejected is because a different, better assumption is identified. Where that's the case, the district court should consider the claim under the better assumption—not just zero-out the claim. The latter approach creates a perverse incentive for plaintiffs seeking a CAFA remand to simply nit-pick assumptions by providing "better" ones, even when, as our Court observed in *LaCross*, remand would still be inappropriate even under the better assumption.

*Jauregui*, 28 F.4th at 996.

Consistent with this analysis, a 2% rate adjusts the calculation presented by Defendant Sheraton to a lower, more reasonable rate. To zero out this claim would not be appropriate given the terms of CAFA.

(3) <u>Attorney's Fees</u>

Plaintiff seeks an award of attorney's fees in this action. Dkt. 1-2 at 23. The Ninth Circuit has "long held (and reiterated [in early 2018]) that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." *Arias*, 936 F.3d at 927 (quoting *Fritsch v. Marriott Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018)). Therefore, "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Id.* (quoting *Fritsch*, 899 F.3d at 794) The defendant retains the burden of proving the amount of future attorney's fees by a preponderance of the evidence. *Id.* at 927–28. Although there is no *per se* rule that attorney's fees must be measured at 25%, *Fritsch*, 899 F.3d at 796, district courts may rely on their own experience in determining attorney's fees because they have "developed expertise in determining 'the number of hours reasonably expended on the litigation multiplied by a reasonable

---

[2] Using the data referenced in the Hanvey Declaration, Dkt. 18-2 ¶ 6, (1,338,592 shifts worked by California non-exempt workers that were over five hours, thus qualifying for a meal break) x (.02) = 26,771.84 violations x $13.00 per hour = $348,033.92.

[3] Using the data referenced in the Hanvey Declaration, Dkt. 18-2 ¶ 7, (1,380,163 shifts worked by California non-exempt workers that were over 3.5 hours, thus qualifying for a rest period) x (.02) = 27,603.26 violations x $13.00 per hour = $358,842.38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
|---|---|---|---|
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

hourly rate' when awarding attorneys' fees under a statute or contract authorizing recovery of 'reasonable attorneys' fees' at the close of litigation." *Fritsch*, 899 F.3d at 795 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Moreover, district courts "may likewise rely on 'their own knowledge of customary rates and their experience concerning reasonable and proper fees.' " *Id.* (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

In its Opposition to the Motion, Defendant Sheraton contends that Plaintiff's alleged entitlement to an award of attorney's fees of 25% adds to the support for showing the required amount in controversy, and is a "fair estimation of the fees in controversy." Dkt. 18 at 21–22. Defendant Sheraton argues that a fee award of 25% of a recovery is the benchmark for an award in the Ninth Circuit, and that this amount is subject to a lodestar cross-check. Dkt. 18 at 21. Plaintiff responds that Defendant Sheraton has not proven this rate by a preponderance of the evidence by presenting, for example, evidence as to the lodestar amount for Plaintiff's counsel based on its work to the present time. Dkt. 19 at 15.

Defendant Sheraton has sufficiently demonstrated that the amount in controversy for future attorney's fees is appropriate and when considered shows that the total amount in controversy exceeds $5,000,000. The 25% benchmark does not *per se* apply in all cases. However, the Ninth Circuit "has not held that such a figure is *per se* unreasonable. *Remillard v. Charles Mach. Works*, No. 23-cv-02639-RS, 2023 WL 4400049, at *1 (N.D. Cal. July 7, 2023). Relying on its own knowledge of customary rates and experience concerning reasonable and proper fees, the Court finds that, a 25% fee calculation is applied in a typical wage and hour class action. *See Cortez v. United Nat. Foods, Inc.*, No. 18-cv-04603-BLF, 2019 WL 955001, at *6–7 (N.D. Cal. Feb. 27, 2019) (approving 25% attorneys' fees rate for labor class action); *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *7 (N.D. Cal. Oct. 25, 2019) (same). Therefore, by applying a 25% rate to the $4,119,367.90 in controversy as to just three of the ten causes of action would result in a fee amount in controversy of $1,029,841.98. This would increase the total amount in controversy as to those three causes of action to $5,149,209.88.[4]

   3.  <u>Total Amount in Controversy</u>

For the reasons stated, Defendant Sheraton has proven by a preponderance of the evidence that the amount in controversy in this action meets CAFA's jurisdictional threshold. The calculations below are summarized as follows:

Meal Break Claims: (1,338,592 shifts worked by California non-exempt workers that were over five hours) x (.02) = 26,771.84 violations x $13.00 per hour = **$348,033.92**

Rest Period Claims: (1,380,163 shifts worked by California non-exempt workers that were over 3.5 hours) x (.02) = 27,603.26 violations x $13.00 per hour = **$358,842.38**

Waiting Time Penalty Claim: (1,039 former employees) x (7.82 hour, average shift length x $14.00 minimum wage) x (30 days) = **$3,412,491.60**

---

[4] Because the amount in controversy is satisfied through these claims, it is unnecessary to address what additional amounts, if any, are warranted as to the remaining seven causes of action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
|---|---|---|---|
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

Attorney's Fees: (25%) x ($4,119,367.90, total claimed) = **$1,029,841.98**. These calculations are summarized in the following table:

| Claim | Amount |
|---|---|
| Meal Break Claims | $348,033.92 |
| Rest Period Claims | $358,842.38 |
| Waiting Time Penalty Claim | $3,412,491.60 |
| **Subtotal** | **$4,119,367.90** |
| Attorney's Fees (25%) | $1,029,841.98 |
| **Total** | **$5,149,209.88** |

    4.    <u>Equitable Jurisdiction</u>

Cal. Bus. & Prof. Code 17200 ("UCL") provides only equitable remedies. *Hodge v. Superior Ct.*, 145 Cal.App.4th 278, 284 (2006). A district court must have equitable jurisdiction to address such a claim. Under the applicable federal common law, there is such equitable jurisdiction only if the plaintiff has no adequate legal remedy. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020); *see also Payne v. Hook*, 74 U.S. 425, 430, (1868) ("The absence of a complete and adequate remedy at law, is the only test of equity jurisdiction . . . .").

Plaintiff argues that under *Sonner*, she cannot pursue or receive equitable relief in federal court because she and Class Members have sought damages, which is an adequate legal remedy. Dkt. 15 at 19. Therefore, she contends that it would promote judicial efficiency to remand the entire action to the Superior Court. *Id.*

*Sonner* involved a complaint that initially brought claims for equitable relief under the UCL and for damages under a separate state law statute. The cause of action for damages was dismissed by the plaintiff for strategic reasons, *i.e.,* so that there would not be a jury trial. 971 F.3d at 837–38. However, relying on California law, the district court then dismissed the UCL claim for restitution because an adequate remedy at law, *i.e.,* damages, was available. *Id.* The plaintiff appealed that decision and argued that California law permits a UCL claim to proceed even if there is an adequate legal remedy. *Id.*

*Sonner* concluded that, in a diversity action, a federal court must apply equitable principles derived from federal common law to claims for equitable relief under the UCL. These included "the principle precluding courts from awarding equitable relief when an adequate legal remedy exists." *Id.* at 837, 842. *Sonner* explained that if the plaintiff had an adequate legal remedy for damages, then under federal common law the plaintiff could not also pursue equitable claims under the UCL in a federal court. *Id.* at 844. Accordingly, although *Sonner* affirmed the dismissal of the plaintiff's equitable claim under the UCL, it did so by applying federal common law, not California law. *Id.* at 845. *Sonner* did not hold that a remand is warranted when a plaintiff has brought a UCL claim in federal court; rather, it concluded that the dismissal of the claim itself is appropriate. *Guzman v. Polaris Industries, Inc.* confirms this conclusion. There, the Ninth Circuit explained that when a district court lacks equitable jurisdiction over a UCL claim, the district court "should" dismiss the UCL claim without prejudice to the refiling of the same claim in state court. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV24-05104-JAK (JPRx) | Date | October 30, 2024 |
|---|---|---|---|
| Title | Iris Ortiz v. Sheraton Operating LLC, et al. | | |

2022), *cert. denied sub nom*. *Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023).

Therefore, it is appropriate to dismiss the UCL claim from this action without prejudice to its being refiled in the Superior Court. *See Travonne Hooks v. Dignity Health*, No. CV 22-07699 DSF (PDx), 2022 WL 17968833, at *3 (C.D. Cal. Dec. 27, 2022). This matter can then proceed with the claims seeking monetary relief under the California Labor Code. Under these circumstances, remand of the entire action is not warranted. *See Treinish v. iFit Inc.*, No. CV 22-4687-DMG (SKx), 2022 WL 5027083, at *3 (C.D. Cal. Oct. 3, 2022).

**V.     Conclusion**

For the reasons stated in this Order, the UCL claim is **DISMISSED WITHOUT PREJUDICE** and the Motion is **DENIED**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | tj |